UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACQUELINE V., | |
| Plaintiff, | |
| v. | No. 20 CV 6272 |
| MARTIN O'MALLEY,<br>COMMISSIONER OF SOCIAL SECURITY, | Magistrate Judge McShain |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jacqueline V. brings this action for judicial review of the Social Security Administration's (SSA) decision denying her applications for benefits. For the following reasons, plaintiff's motion for summary remand [19][1] is denied, the Commissioner of Social Security's motion for summary judgment [24] is granted, and the decision denying plaintiff's applications is affirmed.

## Background

### A. Procedural Background

In May 2018, plaintiff filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income, both alleging a disability onset date of February 1, 2012. [17-1] 21. The applications were denied initially and on reconsideration. [*Id.*]. Plaintiff requested a hearing, which was held by an administrative law judge (ALJ) on January 28, 2019. [*Id.*] 44-63. In a written decision dated November 21, 2019, the ALJ found that plaintiff was not disabled and denied her applications. [*Id.*] 21-35. The Appeals Council denied review in August 2020 [*id.*] 9-14, making the ALJ's decision the agency's final decision. *See* 20 C.F.R. §§ 404.955 & 404.981. Plaintiff then appealed to this Court [1], and the Court has subject-matter jurisdiction over the appeal pursuant to 42 U.S.C. § 405(g).[2]

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record [17], which refer to the page numbers in the bottom right corner of each page.

[2] The parties have consented to the exercise of jurisdiction in this case by a United States Magistrate Judge. [8].

### B. ALJ's Decision

The ALJ reviewed plaintiff's disability claim in accordance with the SSA's five-step sequential-evaluation process. At step one of her decision, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset date. [17-1] 24. At step two, the ALJ determined that plaintiff suffered from four severe impairments: morbid obesity, status post hip replacement on the right, degenerative joint disease of the left hip, and degenerative disc disease of the lumbar spine. [*Id.*] 24-25. At step three, the ALJ ruled that plaintiff's impairments did not meet or equal the severity of a listed impairment. [*Id.*] 25-26. Before turning to step four, the ALJ determined that plaintiff had the residual functional capacity to perform the full range of sedentary work. [*Id.*] 26-33. At step four, the ALJ found that plaintiff could perform her past relevant work as a customer service representative, travel clerk, and reception clerk. [*Id.*] 34. Although that finding meant that plaintiff was not disabled, the ALJ continued to step five and found that a significant number of jobs existed in the national economy that plaintiff could perform, including telemarketer (114,000 jobs), ID clerk (5,000 jobs), and information clerk (4,000 jobs). Accordingly, the ALJ found that plaintiff was not disabled.

### Legal Standard

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the ALJ conducts a sequential five-step inquiry: (1) whether the claimant is unemployed; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment meets or equals any listed impairments; (4) whether the claimant is unable to perform her past relevant work; and (5) whether the claimant is unable to perform any other available work in light of her age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019)). But the standard

"is not entirely uncritical. Where the Commissioner's decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Brett D. v. Saul*, No. 19 C 8352, 2021 WL 2660753, at *1 (N.D. Ill. June 29, 2021) (internal quotation marks and citation omitted).

## Discussion

Plaintiff argues that the ALJ's decision should be reversed and remanded for three reasons. First, plaintiff contends that the ALJ's RFC assessment is flawed because the ALJ did not explain how she determined that plaintiff could sit for up to six hours during a workday or why she did not include postural limitations in the RFC. [19] 5-7. Second, plaintiff argues that the ALJ erred in questioning the vocational expert (VE) because none of the hypothetical questions posed to the VE reflected any postural limitations, plaintiff's claimed need to use a case, or her alleged need to change positions while seated. [*Id.*] 7-11. Third, plaintiff argues that the ALJ erred in evaluating her subjective symptom allegations. [*Id.*] 11-15.

### I. The RFC Determination

"A disability claimant's RFC describes the maximum she can do in a work setting despite her mental and physical limitations." *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014). "An ALJ must evaluate all relevant evidence when determining an applicant's RFC[.]" *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012). "Although an ALJ need not mention every snippet of evidence in the record, the ALJ must connect the evidence to the conclusion; in so doing, he may not ignore entire lines of contrary evidence." *Id.* at 592. An ALJ "must explain [her] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Moira L. v. Kijakazi*, No. 19 C 2687, 2022 WL 846469, at *2 (N.D. Ill. Mar. 22, 2022) (internal quotation marks omitted).

#### A. Ability to Sit

The ALJ determined that plaintiff had the RFC to perform the full range of sedentary work. "[T]he Social Security Administration defines gainful sedentary employment as comprising at least 6 hours of sitting and 2 hours of standing or walking[.]" *Childress v. Colvin*, 845 F.3d 789, 792 (7th Cir. 2017); *see also* Social Security Ruling (SSR) 96-9p, 1996 WL 374185, at *3 (Jul. 2, 1996) (for sedentary work, "[s]itting would generally total about 6 hours of an 8-hour workday"). In concluding that plaintiff was capable of sedentary work, the ALJ discussed at length plaintiff's allegations of disabling pain and physical limitations, the objective medical evidence from plaintiff's treatment record, and the limited opinion evidence. Regarding the opinion evidence, the ALJ stated that she was "persuaded by the limitation to sedentary exertion level generally" that had been opined by both state agency reviewers, Dr. Calixto Aquino and Dr. James Hinchen. [17-1] 78, 112. Both

3

reviewers specifically found that plaintiff could sit for "[a]bout 6 hours in an 8-hour workday." [*Id.*] 75, 109. The ALJ then observed that "[n]one of the other specialists" who had evaluated plaintiff "report a basis for or observation of difficulty sitting." [*Id.*] 33. Finally, the ALJ found that plaintiff "does not regularly report any difficulty sitting to her doctor. In fact, difficulty with sitting i[s] reported very infrequently." [*Id.*].

The ALJ's evaluation of the opinion evidence provides a substantial evidentiary basis for her determination that plaintiff could perform sedentary work, including work that entailed sitting for at least six hours of the workday. Two state agency reviewers concluded that plaintiff could sit for about six hours, there was no opinion evidence to the contrary, and plaintiff's medical records did not demonstrate that plaintiff had difficulty sitting. *See Gedatus v. Saul*, 994 F.3d 893, 904 (7th Cir. 2021) (rejecting plaintiff's argument that ALJ erred "by failing to set forth an evaluation of her sitting ability" and emphasizing that "[a] fundamental problem" for plaintiff was that "she offered no opinion from any doctor to set sitting limits . . . greater than those the ALJ set").[3]

Plaintiff's arguments to the contrary lack merit. Plaintiff maintains that the ALJ should have found that plaintiff "has to adjust positions every five minutes while seated" because "[t]he ALJ did not [specifically] discount [that] allegation[.]" [19] 6. Similarly, plaintiff contends that the ALJ never rejected her testimony that she needs to elevate her feet and/or lie down after sitting for two hours. [*Id.*]. But the ALJ was not required to discuss every piece of plaintiff's testimony when assessing her RFC. *See Nicholas C. v. Kijakazi*, No. 21 C 244, 2023 WL 6160160, at *3 (N.D. Ill. Sept. 21, 2023). More to the point, when the ALJ's decision is read as a whole, it is clear that the ALJ found that these claimed limitations had no support in the record. *See Victor M. v. Kijakazi*, No. 20-cv-7073, 2022 WL 2105893, at *8 (N.D. Ill. Jun. 10, 2022) (courts must "read[ ] the ALJ's decision as a whole and giv[e] it a commonsensical reading rather than nitpicking at it"). As the ALJ observed, plaintiff's treatment records contained no mention of her alleged need to shift positions every five minutes, *see* [17-1] 33, and the ALJ specifically observed that, contrary to plaintiff's testimony, nothing in the records from her hip surgeon, Dr. Beal, reflected that Beal had ever advised her to elevate her feet after sitting for two hours, *see* [*id.*] 27. *See Gedatus*,

---

[3] The ALJ recognized that the record included a November 2015 opinion letter from plaintiff's primary care doctor, Dr. Pat Maier, and her hip surgeon, Dr. Matt Beal. [17-1] 33 (citing [17-1] 529-33). In this letter, the doctors opined that plaintiff could sit for only four hours during the workday and that she required a job that allowed her to shift positions at will from sitting, standing, or walking. [*Id.*] 531. The ALJ declined to consider this opinion because it related to plaintiff's application for benefits for an earlier period of disability, which had been denied in March 2017. *See* [25] 9. While plaintiff notes that the ALJ did not consider this opinion, *see* [19] 6, she does not argue that this was an error. Any such argument has thus been forfeited, *see Ole W. v. Kijakazi*, Case No. 3:21-cv-50032, 2022 WL 2237142, at *4 (N.D. Ill. Jun. 22, 2022), and the Court likewise does not consider this opinion.

994 F.3d at 904 (absence of opinion evidence supporting claimed limitation was "fundamental problem" for claimant arguing that ALJ should have imposed more stringent sitting limitation in RFC); *Imse v. Berryhill*, 752 F. App'x 358, 362 (7th Cir. 2018) (ALJ properly rejected claimant's alleged need to lie down or nap regularly where "[n]o physician, treating or otherwise, has ever indicated that there was a medical reason why she would need to lay down/nap as frequently as alleged during the day").

For these reasons, substantial evidence supports the ALJ's determination that plaintiff could perform sedentary work, including sitting six hours during the workday.

### B. Lack of Postural Limitations in the RFC

State agency reviewers Dr. Aquino and Dr. Hinchen agreed that plaintiff's severe impairments caused the following postural limitations: plaintiff could only frequently balance and climb ramps or stairs; plaintiff could never climb ladders, ropes, or scaffolds; and plaintiff could only occasionally stoop, kneel, crouch, and crawl. [17-1] 75, 110. Despite crediting these reviewers' opinions that plaintiff was limited to sedentary work, the ALJ did not include any of the postural limitations in the RFC. Although the ALJ recognized that these postural limitations "are clearly related to the claimant's obesity," the ALJ omitted them because she did "not find that there is a significant erosion in the occupational base at [the] sedentary [exertion level] due to postural limitations (see SSR 85-15, 83-10, 96-9p)[.]" [*Id.*] 33. Plaintiff argues that the ALJ erred by failing "to include postural limitations in her RFC or explain which limitations were not warranted." [19] 7.

Generally, when an ALJ evaluates opinion evidence, she must explain why she credits certain portions of a given opinion and rejects others. *See Midred B. v. Kijakazi*, No. 19 CV 3532, 2022 WL 1746849, at *3 (N.D. Ill. May 31, 2022). In this case, however, the ALJ adequately explained that incorporating any or all of the postural limitations into the RFC would not significantly erode the occupational base at the sedentary level–and thus would have no effect on whether plaintiff was disabled. The three Social Security Rulings cited by the ALJ demonstrate this point. First, SSR 83-10 provides that, "[b]y its very nature, work performed primarily in a seated position entails no significant stooping." SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983). Second, SSR 85-15 similarly provides that, "[i]f a person can stoop occasionally . . . in order to lift objects, the sedentary and light occupational base is virtually intact." SSR 85-15, 1985 WL 56857, at *7 (Jan. 1, 1985). Third, SSR 96-9p provides that "[p]ostural limitations or restrictions related to such activities as . . . balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because *those activities are not usually required in sedentary work*." SSR 96-9p, 1996 WL 374185, at *7 (Jul. 2, 1996) (emphasis added). Thus, because sedentary work does not ordinarily require

5

any significant amount of stooping, crawling, balancing, or kneeling, the ALJ reasonably concluded that the postural limitations identified by the state agency reviewers would have no effect on the jobs that plaintiff could perform. *Accord Mays v. Colvin*, 739 F.3d 569, 578-79 (10th Cir. 2014) (ALJ's failure to discuss state agency medical consultants' opinions on postural limitations was harmless because opinions were not inconsistent with ALJ's determination that plaintiff could perform light work); *Carrizales v. Kijakazi*, Civ. Action No. 3:22-6087, 2023 WL 6885011, at *7 (W.D. La. Oct. 4, 2023) (rejecting argument that ALJ erred by omitting postural limitations identified by non-examining physicians because "non-exertional limitations that do not significantly impact the occupational base for sedentary work do not undermine the Commissioner's Step Five determination"); *Fleckenstein v. Kijakazi*, Civil Action No. 21-212, 2022 WL 4341049, at *1 n.2 (W.D. Pa. Sept. 19, 2022) ("any error in failing to explicitly adopt all of Drs. Prosperi and Wyszomierski's postural limitations was harmless as Plaintiff has failed to prove how he would have benefitted from the inclusion of those additional limitations in his RFC assessment").

Finally, the ALJ's findings at steps four and five cement the Court's determination that no error occurred or that any error was harmless. *See Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022) (error is harmless only if the Court is "convinced that the ALJ will reach the same result"). The ALJ found that plaintiff could perform three of her past relevant jobs, but none of these positions required climbing, balancing, stooping, kneeling, crouching, or crawling. *See* Dictionary of Occupational Titles (DOT) 249.362-026 – Customer Order Clerk, 1991 WL 672320; DOT 238.362-014 – Travel Clerk, 1991 WL 672203; DOT 237.367-010 – Reception Clerk, 1991 WL 672185. Likewise, none of the jobs that existed in significant numbers in the national economy that plaintiff could perform required climbing, balancing, stooping, kneeling, crouching, or crawling. *See* DOT 299.357-014 – Telemarketer, 1991 WL 672624; DOT 205.362-022 – Identification Clerk, 1991 WL 671711; DOT 237.367-046 – Information Clerk, 1991 WL 672194. Thus, even if the ALJ had included Dr. Aquino's and Dr. Hinchen's postural limitations in the RFC, plaintiff still could have performed all her past relevant work and other jobs existing in the national economy and the ALJ still would have found plaintiff not disabled.

For these reasons, even if the ALJ erred by not discussing whether she credited the state agency reviewers' opinions as to plaintiff's postural limitations–and the Court does not believe that she did–that error was harmless. *Wilder*, 22 F.4th at 654.

## II.     Hypotheticals Posed To The Vocational Expert

Plaintiff next argues that the ALJ's findings at steps four and five are not supported by substantial evidence because the hypothetical questions posed to the VE "did not reflect any postural limitations, the use of a cane, or a need to change positions." [19] 8. This argument fails for two reasons.

6

### A. Sitting and Postural Limitations

First, "[a]n ALJ must include in his hypothetical question all of a claimant's limitations supported by the medical record." *Durham v. Kijakazi*, 53 F.4th 1089, 1096 (7th Cir. 2022) (internal quotation marks omitted). But an ALJ is not required to include in the hypothetical–let alone the RFC assessment–limitations that are not supported by the medical record. *See Rick M. v. Saul*, No. 20 CV 4369, 2021 WL 2588762, at *6 (N.D. Ill. Jun. 24, 2021) ("Although the ALJ considered Rick M.'s mild mental limitations, there was no medical record supporting a mental impairment as a limitation on his residual functional capacity, so the ALJ was not required to incorporate mental limitations into the hypotheticals to the vocational expert."). As discussed above, the ALJ reasonably found that plaintiff could sit for at least six hours during the workday, that she was not otherwise limited in her ability to sit, and that the postural limitations at issue did not significantly erode the occupational base at the sedentary exertion level. Accordingly, the ALJ did not err by failing to include these limitations in the questions posed to the VE (or, for that matter, in the ultimate RFC assessment). *See Durham*, 53 F.4th at 1096; *Rick M.*, 2021 WL 2588762, at *6; *see also Thompson v. Colvin*, 575 F. App'x 668, 677 (7th Cir. 2014) ("the hypothetical questions that the ALJ posed appropriately were based on the limitations that he accepted as credible").

### B. Use of a Cane

Second, as plaintiff accurately observes, the ALJ did not pose any hypotheticals to the VE reflecting that plaintiff needed to use a cane. *See* [17-1] 60-62. However, the ALJ determined that plaintiff's cane was not a medical necessity, and the Court concludes that this finding is supported by substantial evidence.

"A cane must be incorporated in an RFC if it is a medical necessity." *Lohn Eric E. v. Saul*, No. 20 C 2303, 2021 WL 722828, at *2 (N.D. Ill. Feb. 24, 2021). "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information." SSR 96-9p, 1996 WL 374185, at *7. Notably, [a claimant's] use of a cane is not probative of his actual need for the cane." *Stojakovic v. Colvin*, No. 14-CV-5480, 2015 WL 1966857, at *9 (N.D. Ill. May 1, 2015). In certain cases, not even a prescription for cane use will prove medical necessity. *See Henry W.G. v. Kijakazi*, No. 3:22-cv-133-MPB-CSW, 2023 WL 6349418, at *3 (S.D. Ind. Sept. 29, 2023) (affirming ALJ's finding that cane was not medically necessary, despite plaintiff's nurse practitioner having prescribed a cane, because prescription "does not make clear in which specific situations the cane was needed or the basis for the need"); *Arricka C.T. v. Comm'r of Soc. Sec.*, Case No. 1:21-cv-1115-JEH, 2022 WL

7

16707284, at *3-6 (C.D. Ill. Aug. 30, 2022) (affirming ALJ's finding that cane was not medically necessary even though two of plaintiff's treaters prescribed her a cane).

Here, the ALJ recognized that plaintiff often presented at medical appointments with a cane and was observed to use a cane to walk. *See, e.g.*, [17-1] 27 (noting that plaintiff "started using a cane after her hip surgery"); [*id.*] 28 (plaintiff "used a cane" at appointments in September and November 2017); [*id.*] 29 (noting use of cane during appointments in February, June, and August 2019); [*id.*] 30 (plaintiff "ambulating well without difficulty, but with cane for longer distance" during May 2018 rheumatology consult). The ALJ also recognized that the state agency reviewers opined that plaintiff "requires a cane for ambulation, and is able to use the contralateral UE to lift and/or carry." [17-1] 75, 109. But the ALJ determined that plaintiff's cane was not medically necessary. In support, the ALJ found that (1) plaintiff's hip surgeon, Dr. Beal, observed during a June 2018 examination that plaintiff was "bearing weight with no assist with minimal pain" [17-3] 1316, which "wholly contravenes the use of the cane as 'medically necessary'" [17-1] 30; (2) no medical provider had prescribed a cane for plaintiff [*id.*]; (3) plaintiff "ambulated well and without difficulty" during the May 2018 rheumatology consultation and used a cane only for long distances [*id.*] (citing [*id.*] 909); (4) plaintiff was advised during a November 2018 physical therapy appointment that she had been holding her cane in the wrong hand, "indicating that her use of the cane was not related to actual need to do so" [*id.*] 31 (citing [17-3] 1479); (5) plaintiff's "use of the cane when ambulating in the community suggests that she did not use it for shorter distances" [17-1] 31 (citing [17-3] 1470); and (6) plaintiff's gait was not always observed to be antalgic [*id.*] 30 (noting that plaintiff presented with non-antalgic gait during June 2017 appointment with Dr. Daniel Blatz).

This evidence permitted the ALJ to reject the opinions of the state agency reviewers and conclude that plaintiff's use of a cane was not medically necessary. As the ALJ noted, no provider ever issued plaintiff a prescription for the cane, and there is no evidence in the record suggesting "in which specific situations the cane was needed or the basis for the need." *Henry W.G.*, 2023 WL 6349418, at *3. Furthermore, that plaintiff often used a cane "does not necessarily warrant a corresponding RFC restriction," *Joseph M. v. Saul*, No. 18 C 5182, 2019 WL 6918281, at *12 (N.D. Ill. Dec. 19, 2019), particularly in this case, where plaintiff's hip surgeon never prescribed the cane and observed that plaintiff could bear weight relatively well without using an assistive device. As the ALJ further observed, plaintiff was capable of ambulating short distances without a cane, and the record only vaguely suggested that plaintiff tended to use the cane when ambulating longer distances. But the bare fact that plaintiff used a cane was "not probative of [her] actual need for the cane." *Stojakovic*, 2015 WL 1966857, at *9. To the contrary, the documented instances of plaintiff attending medical appointments and ambulating with a cane "are traceable to [her] self-reports and to physicians' observations that [she] *presented* with an assistive

8

device," and not necessarily indicative that the cane was medically necessary. *Tripp v. Astrue*, 489 F. App'x 951, 955 (7th Cir. 2012) (emphasis added).

Plaintiff's contrary arguments lack merit because they ask the Court to find that the ALJ should have drawn different inferences from the evidence of her cane usage, which the Court cannot do. *See Spring W. v. Saul*, Case No. 20 C 1864, 2021 WL 2529615, at *2 (N.D. Ill. Jun. 21, 2021) ("In reviewing an ALJ's decision, the Court may not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ."). Plaintiff contends, for example, that her ability "to go without a cane at times or for some short distances does not support the ALJ's conclusion that she did not require it." [19] 14-15. Yet that is exactly what this evidence suggests: if plaintiff was able to walk short distances and bear weight without the cane–something that the evidence discussed by the ALJ amply supports–then the cane was not medically necessary for plaintiff to ambulate short distances. The fact that plaintiff may have used the cane while walking longer distances is not sufficient to prove medical necessity. *See Tripp*, 489 F. App'x at 955; *Henry W.G.*, 2023 WL 6349418, at *3; *Stojakovic*, 2015 WL 1966857, at *9. Plaintiff also suggests "it is not clear from a 2018 physical therapy note what was included in [her] need to use the cane for 'community ambulation.'" [*Id.*]. But the ALJ was in the best position to evaluate the evidence of plaintiff's need for a cane, and plaintiff has not cited any evidence on this issue that the ALJ failed to consider. *See Spring W.*, 2021 WL 2529615, at *2. Nor does the Court believe it was unreasonable for the ALJ to interpret this treatment note as indicative of plaintiff's ability to ambulate short distances without a cane. The Court therefore concludes that substantial evidence supported the ALJ's finding that the cane was not medically necessary.

Because the ALJ permissibly concluded that plaintiff's cane was not medically necessary, the ALJ did not err by omitting a cane-related limitation from either the hypotheticals she posed to the VE or the RFC assessment. *See Stojakovic*, 2015 WL 1966857, at *9 ("Without a finding that a cane is necessary, the sixth hypothetical posed to the VE," which asked about claimant's need to use a cane, "is effectively moot.").

### III. The ALJ's Subjective Symptom Analysis

Finally, plaintiff argues that the ALJ erred in evaluating his subjective symptom allegations because the ALJ (1) gave undue weight to her ability to complete certain activities of daily living (ADLs), (2) drew a negative inference based on plaintiff's alleged noncompliance with treatment recommendations without considering why plaintiff had been noncompliant, and (3) erred in finding that there was no evidence supporting plaintiff's allegation that Dr. Beal had told her to elevate her feet after sitting. [19] 12-15.

"Social Security Regulation 16-3p outlines a two-step process for an ALJ to follow when evaluating a claimant's subjective symptoms. First, the ALJ must determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce his or her symptoms. Next, the ALJ must evaluate the intensity, persistence, and functionally limiting effects of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities." *Maria S. v. Kijakazi*, No. 20 C 6727, 2023 WL 7130376, at *7 (N.D. Ill. Oct. 30, 2023) (internal quotation marks and citations omitted). "[T]he ALJ must explain her subjective symptom evaluation in such a way that allows the Court to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *Charles B. v. Saul*, Case No. 19 C 1980, 2020 WL 6134986, at *6 (N.D. Ill. Oct. 19, 2020) (internal quotation marks and brackets omitted). "The Court will overturn an ALJ's evaluation of a claimant's subjective symptom allegations only if it is patently wrong." *Id.* (internal quotation marks omitted). "[F]laws in the ALJ's reasoning are not enough to undermine the ALJ's decision that [a claimant] was exaggerating her symptoms. Not all of the ALJ's reasons must be valid as long as *enough* of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) (emphasis in original). The Seventh Circuit has ruled that it "would not reverse the credibility determination as long as the ALJ provided at least one reason to support the finding." *Schrank v. Saul*, 843 F. App'x 786, 789 (7th Cir. 2021).

The ALJ concluded that plaintiff's "subjective allegations as to the degree of [her] limitations" were not "consistent with the record as a whole" because "numerous factors mitigate against a finding of greater limitation that set forth in my [RFC] findings." [17-1] 32. For the following reasons, the Court finds that the ALJ's subjective symptom determination was not patently erroneous.

### A. Activities of Daily Living

Regarding plaintiff's ADLs, the ALJ found that "the claimant's activities are limited but consistent with the ability to perform sedentary work (driving, walking to do laundry, shopping in multiple stores, attending family functions, cleaning her home, preparing meals) and reflect abilities commensurate with my findings." [17-1] 32. Although plaintiff contends that the ALJ improperly conflated her ability to perform ADLs with the ability to do full-time work, the ALJ's decision refutes this contention. *See* [*id.*] ("I am not equating daily activities with work activities"); [*id.*] 27 ("Of course, the breadth of these activities, performed independently, does not on its own establish an ability to sustain sedentary level exertion; however, the performance of these activities in conflict with the claimant's subjective allegations that she did little and could not perform activities independently"). Plaintiff's further argument that the ALJ overstated her ability to perform ADLs and "ignored the limited nature of [her] activities" is also inconsistent with the ALJ's express recognition that plaintiff's ADLs were "limited" but not so limited as to preclude

10

sedentary work. [17-1] 32. And while the ALJ did not recount plaintiff's ability to perform ADLs in the extreme detail that plaintiff would prefer, the law does not require the ALJ to "discuss every detail in the record as it relates to every factor." *Kevin M. v. Kijakazi*, No. 20 C 6451, 2023 WL 1992186, at *5 (N.D. Ill. Feb. 14, 2023). The Court therefore concludes that the ALJ properly considered plaintiff's limited ability to perform ADLs and did not wrongly conflate that ability with proof that plaintiff was capable of full-time sedentary work.

### B.  Inconsistency with Objective Medical Evidence

The ALJ also noted that plaintiff's allegations were inconsistent with the objective medical evidence. For example, the ALJ correctly found that Dr. Beal's treatment notes did not corroborate plaintiff's claim that Beal had instructed her to elevate her feet after sitting. [17-1] 27. Plaintiff now argues that this inconsistency was "trivial" because, in November 2015, a different provider had recommended that she put pillows under her knees. [19] 14. But this was a one-time instruction given to plaintiff, by a different treater and during a different period of disability than the one at issue in this case, and there is no evidence in the record that any provider told plaintiff to continue this practice or otherwise elevate her feet on an ongoing basis. It was reasonable for the ALJ to point out this inconsistency and rely on it when discounting plaintiff's allegations. *See Anders v. Saul*, 860 F. App'x 428, 434 (7th Cir. 2021) ("ALJ permissibly discounted Anders's testimony as inconsistent with the objective evidence" because there was "no record evidence from Anders's treatment providers recommending that he elevate his legs at all, let alone at the frequency and duration that Anders reported"). The ALJ also found that plaintiff's testimony that she needed to use a cane since her 2014 hip surgery was inconsistent with the evidence (discussed in more detail above) that plaintiff often did not require a cane to walk short distances and was capable of bearing weight without using an assistive device. [17-1] 30, 33. Finally, the ALJ properly observed that imaging tests showed only mild to moderate findings and that plaintiff retained a full range of motion (other than in her spine). *See* [*id.*] 30-32. The inconsistencies between plaintiff's allegations and the objective medical evidence supported the ALJ's decision to discredit the alleged severity of plaintiff's limitations. *See Jones v. Astrue*, 623 F.3d 1155, 1161 (7th Cir. 2010) ("discrepancies between the objective evidence and self-reports may suggest symptom exaggeration").

### C.  Failure to Comply with Recommended Treatment

The ALJ also discounted plaintiff's allegations based on plaintiff's "fail[ure] to avail herself of pain management or other treatment such as bariatric evaluation" and her failure to "attend diligently physical therapy or follow up with recommendations." [17-1] 33; *see also* [*id.*] 27-31 (noting multiple instances of plaintiff's failure to attend follow-up appointments and pursue recommended treatment options). Plaintiff argues that the ALJ should not have drawn a negative

11

inference from this evidence because the ALJ never considered why plaintiff missed certain appointments or did not pursue recommended treatments. On this score, the Court agrees with plaintiff in part. An ALJ may not draw a negative inference from a claimant's noncompliance with treatment "unless the ALJ has explored the claimant's explanations for the non-compliance." *Peter W. v. Kijakazi*, No. 21-cv-1552, 2022 WL 3684631, at *2 (N.D. Ill. Aug. 23, 2022). Here, the record suggested several explanations for certain instances of plaintiff's noncompliance: plaintiff was not able to visit a recommended pain center because it did not accept her insurance, and plaintiff sometimes refrained from visiting the hospital to seek pain treatment because she was afraid that she would become addicted to painkillers. *See* [19] 13. There is no indication in the ALJ's decision that the ALJ considered these explanations. However, the ALJ also noted that plaintiff missed many physical therapy appointments without explanation, and plaintiff concedes that "there is nothing in the records indicating why she missed the appointments[.]" [*Id.*]. Likewise, the ALJ accurately noted that plaintiff had canceled a July 2019 appointment for bariatric surgery. [17-1] 32. The fact that a separate record showed that this surgery was listed as pending in August 2019 (though the record does not establish whether plaintiff went forward with the surgery) did not preclude the ALJ from drawing a negative inference, given that plaintiff's unexplained decision to cancel and defer the surgery is arguably inconsistent with plaintiff's allegations of disabling pain and other limitations, many of which stemmed from her morbid obesity. It was therefore proper for the ALJ to rely on the failures to attend physical therapy and to cancel or defer the bariatric surgery because plaintiff "has not pointed to any evidence which would affect the ALJ's finding on [noncompliance with these recommended treatments], such as an inability to afford treatment." *Finney v. Berryhill*, No. 16 C 3815, 2018 WL 1377908, at *6 (N.D. Ill. Mar. 19, 2018).

\* \* \*

In sum, the ALJ identified at least two valid reasons for discounting plaintiff's subjective symptom allegations: their inconsistency with the objective medical evidence and plaintiff's ability to perform a limited amount of ADLs. Therefore, even if the ALJ erred in also relying on plaintiff's noncompliance with recommended treatment without adequately considering why plaintiff was noncompliant, the ALJ's subjective symptom analysis was not patently erroneous. *See Schrank*, 843 F. App'x at 789; *Halsell*, 357 F. App'x at 722.

## Conclusion

For the reasons set forth above, plaintiff's request to reverse and remand the SSA's decision [19] is denied, defendant's motion for summary judgment [24] is granted, and the SSA's decision denying plaintiff's applications is affirmed.

_____
**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: March 29, 2024**